Argued and submitted January 7, affirmed May 22, 1985

In the Matter of the Application of
Reichhold Energy Corporation (to the
Oregon Department of Geology and Mineral
Industries) for an Order Integrating and
Pooling Interests in the NE1/4 of Section
15, T6N, R5W, W.M., Columbia County, Oregon.

REICHHOLD ENERGY CORPORATION,
*Petitioner,*

*v.*

STATE OF OREGON, by and through the
DIVISION OF STATE LANDS et al,
*Respondents.*

(CA A32370)

700 P2d 282

S. Kyle Huber, Portland, argued the cause for petitioner. With him on the brief were James P. Draudt, and Weiss, DesCamp, Botteri & Huber, Portland.

Linda J. DeVries, Assistant Attorney General, Salem, argued the cause for respondent State of Oregon. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Frederic E. Cann, Portland, argued the cause for respondents Edith Williams et al. With him on the brief was Williams, Fredrickson, Stark, Hiefield, Norville & Weisensee, P.C., Portland.

No appearance for respondents William Montier, Harriet Montier, Helen Selander, Charles E. McCulloch, Jr., Shalmon Libel, Norman C. Hanson, David F. Crawford, and Mary Crawford.

Before Warren, Presiding Judge, and Young and Rossman, Judges.

WARREN, J.

**WARREN, J.**

Petitioner seeks review of an order in a contested case proceeding before the Governing Board (Board) of the Department of Geology and Mineral Industries. The Board granted petitioner's request for modification of the price for which it could sell natural gas produced from one of its fields. The Board, however, denied petitioner's request that the price modification be effective retroactively. Petitioner contends that that denial was erroneous, because it was not supported by substantial evidence, as required by ORS 183.482(8)(c). We affirm.

Pursuant to ORS chapter 520, the Board has the authority to regulate the production of oil and gas reserves. The fluid mechanics of oil and gas require the regulation of production to prevent waste and to protect the correlative rights of diverse surface owners whose property overlies a common pool. To accomplish these objectives, the Board is authorized to allot a "spacing unit" to a producing well, ORS 520.210, and to compel integration (*i.e.* participation) when there is diverse ownership of the mineral rights in a spacing unit and the owners are unable to integrate voluntarily their tracts, ORS 520.220(2). ORS 590.220(2) requires the terms and conditions of compulsory integration to be just and reasonable.[1]

On June 3, 1981, petitioner filed an application for the compulsory integration of a spacing unit. On September 29, 1981, the Board entered an interim order integrating the unit and authorizing production. Paragraph 2.2 of the order required petitioner to sell the gas at a price not less than the maximum lawful price allowed by the Federal Natural Gas Policy Act of 1978; paragraph 2.3 obligated petitioner to notify the Board promptly of any problems or unusual circumstances

---

[1] ORS 520.220(2) provides:

"In the absence of voluntary integration, the board, upon the application of any interested person, shall make an order integrating all tracts or interests in the spacing unit for the development and operation thereof and for the sharing of production therefrom. The board, as a part of the order establishing one or more spacing units, may prescribe the terms and conditions upon which the royalty interests in the units shall, in the absence of voluntary agreement, be deemed to be integrated without the necessity of a subsequent order integrating royalty interests. Each such integration order shall be upon terms and conditions that are just and reasonable."

connected with the production of the tract; paragraph 6.1 provided for the Board's continuing jurisdiction over production in the integrated unit; and, finally, paragraph 6.3 stated that the interim order would remain in effect until amended by the Board. Petitioner participated in the development of the terms and conditions and stipulated that they were just and reasonable.

On May 1, 1983, petitioner agreed with its purchaser to sell the natural gas from the integrated unit at a price below that allowed by paragraph 2.2 of the interim order. There is no question but that the price reduction was justified by market conditions or that a price reduction was preferable to shutting down the well with the hope of obtaining a higher price in the future. The Board, however, was neither consulted nor advised of the price reduction until September 27, 1983, when petitioner petitioned for an order authorizing the price reduction effective retroactive to May 1, 1983. On January 24, 1984, the Board ordered, *inter alia,* a price reduction effective September 27, 1983, and thus denied petitioner's request for its retroactive effect.

Petitioner contends that the agency's order is not "just and reasonable," as required by ORS 520.220(2), because it is not supported by substantial evidence. Petitioner argues that the uncontradicted evidence in the record establishes that, after May 1, 1983, it was not possible to sell gas from the integrated field at the price required by the interim order. That evidence, the argument continues, was accepted by the Board in finding of fact 19 in the order.[2] Petitioner notes, though, that in the finding the Board changed the date from which petitioner was unable to satisfy the mandated price from May 1, 1983, to September 27, 1983. Therefore, petitioner concludes, the agency's order is unsupported by the evidence.

---

[2] Finding of fact 19 states:

"Due to market conditions, it was not possible for the operator to continue selling gas at the maximum lawful price under the NGPA on or after September 27, 1983. The only options available to the operator of the CC #4 well were to sell the gas at the competitive price at which other gas could be purchased in the local area based upon arms-length negotiations, or shut-in the well upon the hope that a higher price could be obtained. Testimony of Robert A. Barrows, Testimony of John VanBladeren."

■ ■ Petitioner's contention encompasses two claims of agency error that are based on different premises and require different standards of review. *See McPherson v. Employment Division,* 285 Or 541, 59 P2d 1381 (1979); *Van Gordon v. Ore. State Bd. of Dental Examiners,* 63 Or App 561, 666 P2d 276 (1983). One is that the finding of fact 19 is not supported by the evidence. This claim requires review for substantial evidence in the record. ORS 183.482(8)(c). The other claim is that the agency's findings do not support its decision to deny retroactive effect to its order. This claim requires a determination of whether the Board properly applied the terms "just and reasonable." That determination involves the interrelated questions of whether the agency's decision was an exercise of discretion consistent with the legislative goals embodied in the statutory scheme, ORS 183.482(8)(b)(A); *Springfield Education Assn. v. School Dist.,* 290 Or 217, 228-29, 621 P2d 547 (1980), and whether the agency demonstrated the reasons why the facts led to its decision. *See, e.g., Home Plate, Inc. v. OLCC,* 20 Or App 188, 190, 530 P2d 862 (1975).

■ Finding 19 is supported by substantial evidence, even though the operative date was changed from May 1, 1983, to September 27, 1983. The finding does not imply that the Board found that petitioner was able to sell its gas at the approved price from May 1, 1983, until September 27, 1983. It merely reflects what petitioner's evidence established. On and after September 27, 1983, petitioner was not able to sell gas at the mandated price. That says nothing about what was or was not possible before that date.

■ The question then is whether the Board order was "just and reasonable" under the facts. First, there can be no doubt that the Board's decision to require compliance with its initial order is entirely consistent with its authority under chapter 520 to administer the production of oil and gas reserves. The interim order required petitioner to notify the Board promptly of problems or unusual circumstances affecting production and provided that the order would remain in effect until amended. As noted above, one of the goals of chapter 520 is to protect the correlative rights of diverse surface owners whose property overlies a common pool. If the Board cannot require compliance with its orders, the interests of owners with those rights are placed at risk, because they may have no access to information regarding the operation.

Petitioner could have presented its modification request to the Board contemporaneously with its renegotiation of the contract terms. The decision not to make the change retroactive was not an improper exercise of discretion.

Second, the Board's decision was reasoned from uncontested facts. Its rationale was:

"Reichhold Energy Corporation, as operator, did not file a request for amendment to paragraph 2.2 of the interim order dated September 29, 1981 until September 27, 1983. Said paragraph required that operator dispose of production from CC # 4 at a price which is not less than the maximum lawful price allowed by the Natural Gas Policy Act of 1978. Because the request for amendment was not filed prior to said September 27, 1983, it is just and reasonable that operator be held to the requirements of paragraph 2.2 for all production up to that point."

Thus, the Board "clearly and precisely state[d] what it found to be the facts and fully explain[ed] why those facts led it to the decision it [made]." *Home Plate, Inc. v. OLCC, supra,* 20 Or App at 190.

Affirmed.[3]

---

[3] We have considered petitioner's remaining arguments that the civil pleading concept of relation back of amended pleadings should be considered by analogy to authorize a retroactive order in this contested case proceeding and that the Board's order unlawfully penalizes petitioner. These arguments have no merit and do not warrant further discussion.